[Cite as *State v. Romeo*, 2016-Ohio-5657.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 14 MA 0060 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SUMMER ROMEO | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case Nos. 12 CR 1290 & 12 CR 1292A

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee:
Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant:
Atty. Jan R. Mostov
4822 Market Street, Suite 230
Boardman, Ohio 44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: August 30, 2016

WAITE, J.

{¶1} Appellant Summer Romeo ("Romeo") has filed a timely appeal after being convicted of possession of drugs and as a complicitor to charges of discharging a firearm at or into a habitation in the Mahoning County Common Pleas Court. She raises issues concerning sufficiency and weight of the evidence as well as failure to merge sentences. For the reasons that follow, the judgment of the trial court is affirmed.

Factual History

{¶2} In early December of 2012, Romeo contacted Jesse Grate ("Grate") about performing repairs on her SUV. Grate arranged for his cousin to do the repairs at Grate's home where Grate resided with his fiancée and their three children. On December 5, 2012 Romeo called Grate and complained that the SUV still was not working properly. Grate had her bring the vehicle back to his house so he could look at it himself. After a while, Romeo left with the SUV, only to call Grate later that day to inform him that the SUV was still not getting heat and that the oil dip stick was broken. She continued to call and text Grate throughout the day. Later that afternoon Romeo met Grate at his house, accompanied by her friend, Damari Rodriguez. Grate testified that it was a "friendly conversation" but that Romeo wanted her SUV repaired. Grate added antifreeze to the SUV and Romeo eventually left, apparently satisfied, shortly after 5:05 p.m.

{¶3} Around 7:00 p.m., Romeo and Rodriguez, now accompanied by Tiant Bright ("Bright") and Eric Velasquez, confronted Grate at his house about the repairs. Bright demanded that Grate give them $40 for the broken dipstick, but Grate said he

would purchase a new part himself, as it did not cost $40. Grate, Romeo and Bright began to argue about the situation. Grate testified that Bright started threatening him and his family. (Trial Tr., pp. 231-232.) Grate's fiancée, Penny Yates, approached and also entered into the conflict. She testified that Bright stated, "I will be back." (Trial Tr., p. 432.) Grate testified that they got back into the SUV and Bright told Romeo to take him to "Laclede [so he could] go get [his] gun." (Trial Tr., p. 232.)

{¶4} Shortly before 8:00 p.m., Romeo's SUV pulled up in front of Grate's house. This incident has been referred to as "Incident One" throughout the proceedings. (Two additional interactions occurred that same evening and have been referred to as "Incident Two" and "Incident Three" for clarification purposes). Grate testified that Romeo was driving and Bright was sitting behind her. At some point, Bright stuck his hand, holding what appeared to be a handgun, outside of the vehicle and shot off several rounds "kind of towards the house but mostly like at the air." (Trial Tr., pp. 232-233.) Grate was standing on his front porch with Yates and three other individuals. Grate called 911 at 7:48 p.m. The police arrived and spoke to Grate, who gave a police report including a description of the vehicle. Grate and Yates both testified that Romeo and Bright continued driving up and down the street in front of the house, now followed by a second vehicle, a large pickup truck. (Trial Tr., p. 235.) Romeo continued sending threatening texts after the first incident. Grate testified he decided that Yates and the children should leave the house for the rest of the evening. (Trial Tr., p. 234.)

{¶5} Around 8:30 p.m., both vehicles pulled up in front of Grate's home, although Grate was now at his neighbor's house only a few houses away. (Trial Tr., p. 236.) Grate heard gunshots which he believed came from the truck as it was stopped in front of his house. (Trial Tr., p. 316.) Grate then testified that he, his cousin and a few others hunkered down in his house with the lights out and blankets and garbage bags covering the windows to avoid detection by Romeo and Bright in the event the hostilities continued. (Trial Tr., pp. 237-238.) Shortly thereafter, Grate's friend informed him that individuals were approaching the house through the backyard. Grate noticed an individual wearing a hoodie similar to the one he had seen Bright wearing earlier that evening. (Trial Tr., pp. 239-240.) Grate called 911 and was still on this call when the house was hit by several gunshots. (Trial Tr., pp. 241-242.) After the gunshots died down, Grate testified he went out on the front porch and saw Romeo's SUV drive down the street, make a U-turn and head back up the street. (Trial. Tr., p. 242.)

{¶6} Police arrived shortly thereafter to investigate the scene and interview any witnesses. Having a full description of Romeo's SUV, the police later stopped Romeo driving the vehicle at approximately 11:00 p.m. Romeo, the only person inside, was detained and the vehicle was towed. Romeo was indicted by the Grand Jury on January 3, 2013 in Case No. 12 CR 1292A on two counts of felonious assault in violation of R.C. 2903.11(A)(2), (D); one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), (C); three firearm specifications in violation of R.C. 2941.145(A); and three firearm specifications in

violation of R.C. 2941.146(A). Romeo was also indicted in Case No. 12 CR 1290 on one count of possession of drugs in violation of R.C. 2925.11(A). This charge is not at issue, here.

**{¶7}** Co-defendant Bright was indicted on the same offenses and their joint trial commenced March 3, 2014. The jury ultimately found Romeo guilty as a complicitor of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), (C); a firearm specification under R.C.2941.145(A); and a firearm specification pursuant to R.C. 2941.146(A). An oral motion seeking acquittal notwithstanding the verdict was made by Romeo's trial counsel after the jury verdict was read. That motion was denied by the trial court. On March 19, 2014, Romeo filed a "Renewed Motion for Judgment of Acquittal and Motion for a New Trial." The trial court denied those motions by judgment entry dated March 31, 2014.

**{¶8}** On May 14, 2014, the trial court sentenced Romeo. Romeo received twelve months of incarceration on the drug possession case to be served concurrently with a three-year sentence for improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161(A)(1); three years to be served consecutively for the firearm specification in violation of R.C. 2941.145(A); and five years to be served consecutively for the firearm specification in violation of R.C. 2941.146(A), for a total of eleven years in prison. Romeo filed this appeal and sets forth three assignments of error.

FIRST ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED, DEPRIVING MS. ROMEO OF HER RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, WHEN IT DENIED HER CRIM. R. 29 MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT, WHEN THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

**{¶9}** In her first assignment, Romeo contends the trial court erred in denying her Crim.R. 29 motion for judgment for acquittal notwithstanding the verdict when the prosecution failed to present sufficient evidence that she knowingly aided and abetted Bright in discharging a firearm at or into the Grate residence.

**{¶10}** In *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), the Supreme Court of Ohio set forth the standard for determining whether a Crim.R. 29 motion for acquittal is properly denied. "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *Id.* at syllabus. Thus, a Crim.R. 29 motion seeking acquittal tests the sufficiency of the evidence presented at trial. *State v. Williams,* 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996). Sufficiency of the evidence is a legal question which involves an inquiry into whether the evidence submitted at trial is sufficient to support the verdict as a matter of law. *State v.*

*Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). In essence, it asks whether adequate evidence exists to submit the case to a jury. In determining sufficiency, the evidence and all inferences to be drawn from the evidence must be evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 128, 694 N.E.2d 916 (1998). A conviction will not be reversed on sufficiency grounds unless on review the court concludes that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.* at 138.

**{¶11}** Romeo was convicted as a complicitor of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161(A)(1) which states: "No person, without privilege to do so, shall knowingly * * *(1) [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." "Knowingly" is defined in R.C. 2901.22(B):

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶12} Romeo claims her convictions were based solely on the testimony of Grate and Yates at trial and that there was conflicting testimony about whether a firearm was seen or discharged during Incident One. Romeo also asserts the trial testimony of Grate and Yates differs from the testimony of a police officer who was on the scene as to whether Grate or Yates identified the driver of the vehicle during Incident One. Romeo cites to the 911 tape, admitted into evidence at trial, which did not positively identify Romeo as being the driver.

{¶13} Grate testified at trial that Bright told Romeo to take him to get his gun and that he witnessed Romeo's vehicle pull up in front of his home as Incident One commenced. (Trial Tr., p. 232.) Moreover, Grate and Yates both testified at trial that they saw Romeo and Bright drive repeatedly up and down the street past their residence. (Trial Tr., pp. 234, 437.) Detective/Sergeant Ronald Rodway testified at trial that Romeo admitted to continually sending threatening text messages throughout the evening and could not account for her whereabouts between approximately 6:00 p.m. until 11:00 p.m. that evening. (Trial Tr., pp. 559-561.)

{¶14} Prior to Incident One, Bright was heard telling Romeo to take him to get his gun. As Incident One commenced, Romeo's car was parked in front of Grate's house. Evidence established that witnesses saw Romeo in the driver's seat and that a gun was seen protruding from the back seat window. Gunshots were heard emanating from the vehicle. Coupled with her threatening text messages to Grate throughout the entire evening and her failure to account for her whereabouts until 11:00 p.m., at which time she was detained by police and taken into custody, we

conclude there was sufficient evidence to establish Romeo's guilt for knowingly aiding and abetting Bright in discharging a firearm at or into Grate's residence. Romeo's first assignment of error is without merit and is overruled.

<u>SECOND ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE THE FIREARM SPECIFICATIONS, WHICH REFER TO THE SAME CRIMINAL ACT OR TRANSACTION AND WERE NOT COMMITTED WITH SEPARATE ANIMUS.

**{¶15}** Romeo argues that the trial court erred in failing to merge the three-year and five-year firearm specifications attached to the conviction for discharging a firearm at or into a habitation because they refer to the same criminal act and were not committed with separate animus. Romeo cites R.C. 2929.14(D)(1)(b) for the proposition that the trial court cannot impose more than one sentence for multiple firearm specifications if they refer to the same criminal act. We note that there is no part (b) contained within R.C. 2929.14(D)(1); however, R.C. 2929.14(B)(1)(b) provides:

> If a court imposes a prison term on an offender under division (B)(1)(a) of this section, the prison term shall not be reduced pursuant to section 2967.19, section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of

this section for felonies committed as part of the same act or transaction.

**{¶16}** R.C. 2929.14(B)(1)(g) provides:

If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

**{¶17}** Because Romeo was not convicted of "two or more felonies" as contained within R.C. 2929.14(B)(1)(g), it is R.C. 2929.14(B)(1)(c) that applies:

Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a violation of section 2923.161 of the Revised Code or to a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another, also is convicted of or pleads guilty to a

specification of the type described in section 2941.146 of the Revised Code that charges the offender with committing the offense by discharging a firearm from a motor vehicle other than a manufactured home, the court, after imposing a prison term on the offender for the violation of section 2923.161 of the Revised Code or for the other felony offense under division (A), (B)(2), or (B)(3) of this section, *shall impose an additional prison term of five years upon the offender* that shall not be reduced pursuant to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code.  A court shall not impose more than one additional prison term on an offender under division (B)(1)(c) of this section for felonies committed as part of the same act or transaction.  *If a court imposes an additional prison term on an offender under division (B)(1)(c) of this section relative to an offense, the court also shall impose a prison term under division (B)(1)(a) of this section relative to the same offense, provided the criteria specified in that division for imposing an additional prison term are satisfied relative to the offender and the offense.*  (Emphasis added.)

**{¶18}** R.C. 2929.14(B)(1)(a) mandates a three-year term of incarceration pursuant to R.C. 2941.145(A).  Pursuant to the foregoing statutory sentencing framework, the trial court is required to impose both the three-year and five-year terms of incarceration for the firearm specifications.  Therefore, the trial court did not

err in sentencing Romeo to both the three-year and five-year sentences for the firearm specifications attached to her conviction for discharging a firearm at or into a habitation in violation of R.C. 2941.145(A), R.C. 2929.14(B)(1)(a) and R.C. 2929.14(B)(1)(c).

{¶19} Appellant's second assignment of error is without merit and is overruled.

<u>THIRD ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT MS. ROMEO'S CRIM. R. 29 MOTIONS FOR A DIRECTED VERDICT OF ACCQUITAL [SIC] & MOTION FOR A NEW TRIAL, BECAUSE THE GUILTY VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis deleted.) *Id.*

{¶21} When reviewing a manifest weight of the evidence argument, a reviewing court must examine the entire record, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387, 389. Only in

exceptional circumstances will a conviction be reversed as against the manifest weight of the evidence. *Id.* This strict test for manifest weight acknowledges that credibility is generally the province of the factfinder who sits in the best position to accurately assess the credibility of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶22}** Romeo was convicted as a complicitor of discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), (C). Romeo's argument that the conviction is against the manifest weight of the evidence is based on purported conflicts in the testimony given by officers at the scene of Incident One and that of Jesse Grate and Penny Yates.

**{¶23}** Officer Brad Ditullio testified that Yates and Grate did not give him specific names of the suspects after Incident One and that there was nothing written in the police report he drafted to indicate either Yates or Grate saw gunfire coming from the vehicle during Incident One. Officer Christopher Staley testified that, upon arrival after Incident One, he searched the immediate area and found no shell casings and no bullet holes in the residence.

**{¶24}** Penny Yates testified at trial that she saw Romeo's car stop in front of their residence. Romeo was driving and Bright was sitting behind her with a gun pointed out the window. She also acknowledged in her testimony that she had not been able to identify Bright in a police lineup. Grate testified that it was Romeo's car that pulled up to the residence and that Romeo was driving with Bright seated behind

her. He also testified that he saw a gun pointed out of the rear window and heard gunshots emanating from the vehicle.

{¶25} Romeo conflates the differences in the testimony arguing that it rises to the level necessary to determine that the trier of fact lost its way and created a manifest miscarriage of justice. We are not so persuaded. Although the evidence does reflect minor differences, it is not of the contradictory nature urged by Romeo. Nor was this the only evidence presented to the jury. The jury heard testimony that Romeo persisted in sending threatening text messages throughout the evening, that Bright told Romeo to take him to get his gun and that Romeo could not account for her whereabouts for most of the evening. This Court is not persuaded that the jury's verdict, in light of all evidence presented, is contrary to the manifest weight of the evidence. The jury did not clearly lose its way and create a manifest miscarriage of justice. The record reflects that the jury properly reviewed the evidence before it and drew acceptable inferences. Therefore, Romeo's third assignment of error is without merit and should be overruled.

{¶26} Based on the foregoing, Appellant's three assignments of error lack merit and are overruled and the judgment of the trial court is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.